David M. Stein (State Bar No. 198256)
dstein@ggtriallaw.com
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, California 92626
Phone: 949.383.2800
Fax:    949.383.2801

Michael F. Heim (*Pro Hac Vice* Application to be filed)
mheim@hpcllp.com
Eric J. Enger (*Pro Hac Vice* Application to be filed)
eenger@hpcllp.com
Christopher M. First (*Pro Hac Vice* Application to be filed)
cfirst@hpcllp.com
Blaine A. Larson (*Pro Hac Vice* Application to be filed)
blarson@hpcllp.com
**HEIM, PAYNE & CHORUSH LLP**
1111 Bagby St., Suite 2100
Houston, TX 77002
Phone: 713.221.2000
Fax:    713.221.2021

Attorneys for Plaintiff *Rembrandt Wireless Technologies, LP*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REMBRANDT WIRELESS TECHNOLOGIES, LP,<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM INCORPORATED and BROADCOM CORPORATION,<br><br>Defendant. | Case No.: 8:19-cv-708<br><br>COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 8,457,228 & 8,023,580<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Rembrandt Wireless Technologies LP ("Rembrandt" or "Plaintiff") hereby submits this Complaint against Defendants Broadcom Incorporated and Broadcom Corporation (collectively, "Broadcom") and states as follows:

## THE PARTIES

1. Rembrandt is a Virginia limited partnership, having a principal place of business at 401 City Ave., Suite 900, Bala Cynwyd, Pennsylvania 19004.

2. Rembrandt is the assignee and owner of the patents at issue in this action: United States Patent No. 8,457,228 ("the '228 Patent") and United States Patent No. 8,023,580 ("the '580 Patent").

3. Rembrandt is informed and believes, and on that basis alleges, that Broadcom Incorporated is a Delaware corporation with its principal places of business at 1320 Ridder Park Dr., San Jose, California 95131. Broadcom Incorporated may be served with process through its registered agent, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware, 19808.

4. Rembrandt is informed and believes, and on that basis alleges, that Broadcom Corporation is a California corporation with its principal place of business at 1320 Ridder Park Dr., San Jose, California 95131. On information and belief, Broadcom Corporation is a wholly-owned subsidiary of Broadcom Incorporated. Broadcom Corporation may be served with process through its registered agent, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.*

6. The Court has personal jurisdiction over Defendants, including because Defendants have minimum contacts within the State of California; Defendants have purposefully availed themselves of the privileges of conducting

business in the State of California; Defendants regularly conduct business within the State of California; and Plaintiff's cause of action arises directly from Defendants' business contacts and other activities in the State of California, including at least by virtue of Defendants' infringing systems, devices, and methods, which are at least sold, practiced, and/or used in the State of California. Further, this Court has general jurisdiction over Defendants, including due to their continuous and systematic contacts with the State of California. Further, on information and belief, Defendants are subject to the Court's jurisdiction, including because Defendants have committed patent infringement in the State of California.

7. Venue is proper in this federal district pursuant to 28 U.S.C. §§1391(b)-(c) and 1400(b). Without limitation, on information and belief, Defendants have regular and established places of business in this District, and in California, and at least some of its infringement of the patents-in-suit occurs in this District, and in California.

8. Without limitation, on information and belief, venue is proper in this District because Defendants have physical places from which their business is conducted within this District comprising Broadcom offices, including at 15101 Alton Parkway, Irvine, California 92618 and 5300 California Avenue, Irvine, California 92617; the business conducted at such places is steady, uniform, orderly, and/or methodical, and is settled and not transient, including, but not limited to, distribution, sales, and/or offers for sale, including related to infringing methods and apparatuses. On information and belief, Defendants also have Broadcom offices in multiple locations throughout the state of California, and it has significant corporate facilities in San Diego, CA and Santa Clara, CA as well. Further, on information and belief, Defendants are subject to venue in this District, including because Defendants have committed patent infringement in this District. Pursuant to 35 U.S.C. § 271, Defendants infringe the patents-in-suit by the infringing acts described herein in this District. Further, Defendants solicit and

induce customers/users in this District, including via their development, marketing, and sales of its infringing chips.  On information and belief, Defendants have customers/users who are residents of this District and who purchase, acquire, and/or use Defendants' infringing products in this District.

## **INFRINGEMENT OF U.S. PATENT NO. 8,457,228**

9. On June 4, 2013, United States Patent No. 8,457,228 was duly and legally issued for inventions entitled "System and Method of Communication Using at Least Two Modulation Methods."  The '228 Patent claims priority back through a string of continuation applications to US Application No. 09/205,205, which was filed on December 4, 1998, and to Provisional Application No. 60/067,562, filed on December 5, 1997.  Thus, each of the asserted claims of the '228 Patent are entitled to a priority date of December 5, 1997.  The '228 Patent expired on December 4, 2018, but Rembrandt is entitled to damages for infringement that occurred before the expiration of the '228 Patent.  Rembrandt was assigned the '228 Patent and continues to hold all rights and interest in the '228 Patent, including the right to recover damages for past infringement.  A true and correct copy of the '228 Patent is attached as Exhibit A.

10. According to the '228 Patent, prior master/slave systems could communicate only when all network devices used a single common type of modulation method.  *See* '228 Patent at 1:29-67, 3:64-4:5.  Thus, if a slave using an additional type of modulation method were added to the network, the new slave could not easily communicate with the master using the different modulation type because it would not be compatible with the common type of modulation method.  *Id.*  Annotated figure 1 of the '228 Patent shows a master/slave system, where all devices in the network communicate using only a single common type of modulation method (such as the amplitude modulation used by AM radio), even though some of the devices may be capable of communication via other types of modulation methods:

**Common Modulation Method (e.g., AM)**

**FIG. 1 Prior Art**

11. The master/slave concept is described in the '228 Patent at col. 3, line 64-col. 5, line 7, with reference to Fig. 2. Briefly, Fig. 2 discloses a polled multipoint master/slave system. At the beginning of a session, the master established a common modulation type for communication with all its slaves (sequence 32 in Fig. 2). All slaves were identical in that they shared a common modulation with the master. The master then communicated with its slaves, one at a time, by sending a training sequence with the address of the slave with which it wants to communicate, followed by data, and finally a trailing sequence to end the communication (sequences 34-38 in Fig. 2). A slave could not initiate a communication, but, if the slave were polled by the master, it could respond to the master in a similar fashion (sequences 42-46 in Fig. 2). When the master had completed its communications with the first slave, it could then communicate with a second slave using the same negotiated common modulation (sequences 48-54 in Fig. 2).



FIG. 2

12. In the context of the master/slave system described above, inventor Gordon Bremer created "a system and method of communication in which multiple modulation methods are used to facilitate communication among a plurality of modems in a network, which have heretofore been incompatible." '228 Patent at 2:20-23. Mr. Bremer solved the problem with his claimed master/slave communication system in which slaves can seamlessly communicate over a network through a master using different types of modulation methods, thereby permitting selection of the modulation type best suited for a particular application. '228 Patent at 2:27-3:14, 5:32-46.

13. The claimed invention of the '228 Patent is further described with reference to Figure 2 and in Figures 3-8 and the written description. Specifically, Figures 3 and 4 show block diagrams of the master transceiver and tributary transceivers, while Figure 5 shows a ladder diagram illustrating the operation of those transceivers. Figures 6 and 7 show state diagrams for exemplary tributary transceivers. Figure 8 shows a signal diagram for exemplary transmissions.

14. Annotated Fig. 4 shows an embodiment of the patented technology where some devices in the network communicate using one type of modulation method (*e.g.*, amplitude modulation used by AM radio), while other devices communicate using a different type of modulation method (*e.g.*, the frequency modulation used by FM radio):



FIG. 4

'228 Patent at 6:4-13. Such a system provides for greater efficiency, seamless communication with all devices, backward-compatibility, and decreased costs. *Id.* at 3:9-14; *see also id.* at 2:1-18, 5:32-46.

15. Annotated Fig. 8 shows two communications intended for different slaves. The first communication 170 uses a first type of modulation method for both the initial training signal and the subsequent data signal, while communication 172 uses the first type of modulation method for the training signal and the second type of modulation method for the data signal:



'228 Patent at Fig. 8, 4:45-48, 4:66-5:1. Information in the training signal indicates whether there will be an impending change from the first type of modulation method to the second type of modulation method. *Id.* (training signal includes "notification of change to Type B" modulation method).

16. Mr. Bremer's solution is captured and claimed in his seamless "switches" from one modulation type to another and is described with reference to Fig. 5:



FIG. 5

17. With reference to Fig. 5, for the Master ("Master Type A and B 64") to communicate with a Type A trib ("Trib 1 Type A 66a") using a negotiated first modulation type A method in the normal fashion, the Master transmits a "first message" (sequences 126, 132, 134). The "first message" includes (i) "first information" (training sequence 126) modulated according to the first modulation type A method and (ii) "second information" (transmission sequence 132) modulated according to the first modulation type A method and including data

-8-
COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 8.457.228 & 8.023.580

1  intended for the Type A trib. The "first information" includes first message
2  address information that is indicative of the Type A trib being an intended
3  destination of the "second information." '228 Patent at 7:11-13 ("a training
4  sequence 126 in which an address of a particular type A trib 66a is identified").

5      18. For the Master ("Master Type A and B 64") to communicate with a
6  Type B trib ("Trib 2 Type B 66b") using a second modulation type B method, the
7  Master transmits a "second message" (sequences 106, 108, 114). The "second
8  message" includes "third information" (training sequence 106) modulated
9  according to the first modulation type A method and including information that is
10 indicative of an impending change in modulation to the second modulation type B
11 method. '228 Patent at 6:27-30 ("To switch from type A modulation to type B
12 modulation, master transceiver 64 transmits a training sequence 106 to type A tribs
13 in which these tribs are notified of an impending change to type B modulation.").
14 The "second message" also includes "fourth information" (transmission sequence
15 108) that is transmitted after transmission of the "third information," is modulated
16 according to the second modulation type B method, and includes data intended for
17 the Type B trib. '228 Patent at 6:32-36 ("After notifying the type A tribs 66a of
18 the change to type B modulation, master transceiver 64, using type B modulation,
19 transmits data along with an address in sequence 108, which is destined for a
20 particular type B trib 66b."). In addition, the "second message" includes second
21 message address information that is indicative of the Type B trib being an intended
22 destination of the fourth information. *Id.*

23     19. The specification of the '228 Patent describes the claimed switches as
24 follows:

25     "To switch from type A modulation to type B modulation, master
transceiver 64 transmits a training sequence 106 to type A tribs 66a in which
26 these tribs are notified of an impending change to type B modulation….
27 After notifying the type A tribs 66a of the change to type B modulation,
master transceiver 64, using type B modulation, transmits data along with an
28

address in sequence 108, which is destined for a particular type B trib 66b…." [Col. 6, ll. 27-36.]

"If, however, master transceiver transmits a training sequence in which the type A tribs 66a-66a are notified of a change to type B modulation as indicated by sequence 106, then a transition is made to state 124 where all type B transmissions are ignored until a type A modulation trailing sequence (e.g., sequence 114) is detected. Upon detecting the type A trailing sequence, a type A trib 66a returns to state 122 where it awaits a training sequence." [Col. 7, ll. 3-10.]

"To initiate a communication session with a type A trib 66a, master transceiver 64 transmits a training sequence 126 in which an address of a particular Type A trib 66a is identified. The identified Type A trib 66a recognizes its own address and transitions to state 128 to receive data from master transceiver 64 as part of sequence 132." [Col. 7, ll. 11-16.]

20. The technology recited in the claims of the '228 Patent provides an inventive concept and does not claim an abstract idea. Due to the inventive combination of elements, the claimed inventions achieve many benefits over prior art systems and methods, including the benefits noted above (*i.e.*, greater efficiency, seamless communication with all devices, backward-compatibility, and decreased costs). '228 Patent at 3:9-14; *see also id.* at 2:1-18, 5:32-46.

21. The claimed inventive concepts greatly enhance and facilitate technological systems, architectures, and methods through the use of a master communication device in a master/slave relationship with other slave communication devices. The master communication device transmits messages with particular sequences using two different types of modulation methods to facilitate communication between different type slave devices. The technology recited in the claims of the '228 Patent improves the functioning of computer devices and improves over existing technological processes, including with respect to master-slave communication systems that implement different types of modulation methods.

22. The '228 Patent describes systems and methods that solved technical problems. Those problems included the ability to communicate in a master-slave environment amongst devices that implement different families of modulation techniques. These problems also included backwards compatibility with older devices using different types of modulation.

23. The technological improvements described and claimed in the '228 Patent were not conventional or generic at the time of their invention, but rather required novel and non-obvious solutions to problems and shortcomings in the art at the time. The inventions claimed in the '228 Patent also cover more than just the performance of well-understood, routine or conventional activities known in the art. For example, Claim 21 of the '228 Patent is directed to a particular master communication device that can communicate with slave devices using different families of modulation techniques.

24. The '228 Patent claims inventions that provide technological solutions to technological problems. The written description of the '228 Patent describes in technical detail each of the elements of the claims, including a master device that can communicate with slave devices using different types of modulation methods according to particular sequences of messages.

25. The claims of the '228 Patent are not directed to basic tools of scientific and technological work, fundamental economic practices, or the use of an abstract mathematical formula. Rather, the claims are directed to a master communication device that can communicate with slave devices (which implement entirely different families of modulation techniques) using particular sequences of messages containing different types of modulation methods.

26. The '228 Patent does not preempt any abstract idea or otherwise preempt anything that would render them unpatentable. For example, one is free to practice the prior art of record. The '228 claims do not improperly inhibit further

discovery by tying up any building blocks of human ingenuity or technological work.

27. The '228 Patent claims cannot be practiced by a human alone. Indeed, master/slave communication systems using different types of modulation methods exist only in the context of wireless communication devices.

28. Upon information and belief, Broadcom has infringed directly and indirectly and continues to infringe directly and indirectly claim 21 of the '228 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of products practicing any of the following Bluetooth specifications that support Enhanced Data Rate ("EDR"): Version 2.0 + EDR, Version 2.1 + EDR, Version 3.0 + HS, Version 4.0 + LE, Version 4.1, Version 4.2, or version 5 (collectively, the "Bluetooth EDR Specifications"). Such Broadcom products that support one or more of the Bluetooth EDR Specifications are hereinafter referred to as the "Broadcom Bluetooth EDR Products."

29. Broadcom's Bluetooth EDR Products include, but are not limited to, the: BCM2035, BCM2040, BCM2042, BCM2044, BCM2044S, BCM2045, BCM2046, BCM2047, BCM2048, BCM2049, BCM2070, BCM20702, BCM20705, BCM20705A1, BCM20705B0, BCM20730, BCM20733, BCM4329, BCM4330, BCM4313, BCM4334, BCM4335, BCM4356, BCM4358, BCM4375, BCM43012, BCM43142, BCM43241, BCM43572; and all other devices that use or permit use of Bluetooth EDR.

30. Broadcom's Bluetooth EDR Products satisfy the limitations of the claims of the '228 Patent. For example, each of Broadcom's Bluetooth EDR Product is a "master communication device" that can operate in the role of the master in a master-slave relationship and communicate with other Bluetooth EDR Products operating in the role of slaves. Further, each of Broadcom's Bluetooth EDR Products can transmit using at least two "different types" of modulation methods: (1) a "first" Gaussian Frequency Shift Keying (GFSK) modulation

method; and (2) a "second" Differential Phase Shift Keying (DPSK) modulation method. Each of Broadcom's Bluetooth EDR Products can transmit a "first message" in the form of a Basic Rate packet (with a GFSK access code/header and a GFSK payload) and a "second message" in the form of an Enhanced Rate packet (with a GFSK access code/header and a DPSK payload). Further, the access code/header of the both messages includes "first message address data" comprising an LT_ADDR.

31. Upon information and belief, at least as of the filing of this complaint, Broadcom also indirectly infringes one or more claims of the '228 Patent by active inducement under 35 U.S.C. § 271(b). Broadcom has induced, caused, urged, encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import products which are interoperable according to the Bluetooth EDR Specifications and thereby infringe the '228 Patent. Broadcom has done so by acts including, but not limited to, selling products that are interoperable according to the Bluetooth EDR Specifications to their customers; marketing the infringing capabilities of such products; and providing instructions, technical support and other support and encouragement for the use of such products. Such conduct by Broadcom was intended to and actually resulted in direct infringement, including the making, using, selling, offering for sale and/or importation of infringing Broadcom Bluetooth EDR Products in the United States. Broadcom has notice of the '228 Patent by at least the date of this complaint but, upon information and belief, Broadcom knew of the '228 Patent far earlier as a result of Broadcom following and/or press coverage of Rembrandt's prior litigation asserting the '228 Patent against Samsung, one of Broadcom's biggest customers. Moreover, Broadcom knew of the '228 Patent at least as early as December 3, 2013, as it was served a subpoena in the *Rembrandt v. Samsung* litigation that identified the '228 patent by its full patent number, and set forth the standards upon which Rembrandt's infringement case was premised. Further, Broadcom

employee Stephen Hall was deposed in the *Rembrandt v. Samsung* litigation and attended trial in that case, where he was a witness.

32. The acts of infringement by Broadcom have caused damage to Rembrandt, and Rembrandt is entitled to recover from Broadcom the damages sustained by Rembrandt as a result of Broadcom's wrongful acts in an amount subject to proof at trial. Specifically, Rembrandt seeks damages for Broadcom's infringement of the '228 Patent from its date of issuance, June 4, 2013, until the date that Samsung became licensed to the '228 Patent and became obligated to mark its licensed products with the '228 Patent number, which occurred on August 27, 2018.

33. Upon information and belief, since at least the filing of this lawsuit, Broadcom's aforementioned actions have been, and continue to be, committed in a knowing and willful manner and constitute willful infringement of the '228 Patent.

## INFRINGEMENT OF U.S. PATENT NO. 8,023,580

34. On September 20, 2011, United States Patent No. 8,023,580 was duly and legally issued for inventions entitled "System and Method of Communication Using at Least Two Modulation Methods." The '580 Patent claims priority back through a string of continuation applications to US Application No. 09/205,205, which was filed on December 4, 1998, and to Provisional Application No. 60/067,562, filed on December 5, 1997. Thus, each of the asserted claims of the '580 Patent are entitled to a priority date of December 5, 1997. The '580 Patent expired on December 4, 2018, but Rembrandt is entitled to damages for infringement that occurred before the expiration of the '580 Patent. Rembrandt was assigned the '580 Patent and continues to hold all rights and interest in the '580 Patent, including the right to recover damages for past infringement. A true and correct copy of the '580 Patent is attached as Exhibit B.

35. The '580 Patent shares the same specification as the '228 Patent. Accordingly, the above statements in paragraphs 9-27 above apply equally to the '580 Patent, and Rembrandt incorporates them by reference herein.

36. Upon information and belief, Broadcom has infringed directly and indirectly and continues to infringe directly and indirectly claims 2 and 59 of the '580 Patent. The infringing acts include, but are not limited to, the manufacture, use, sale, importation, and/or offer for sale of Broadcom Bluetooth EDR Products that practice any of the Bluetooth EDR Specifications (as those terms are defined above for the '228 Patent).

37. Broadcom's Bluetooth EDR Products satisfy the limitations of the claims of the '580 Patent. For example, each of Broadcom's Bluetooth EDR Product is a "communication device" that can operate in the role of the master in a master-slave relationship and communicate with other Bluetooth EDR Products operating in the role of slaves. Further, each of Broadcom's Bluetooth EDR Products can transmit using two "different types" of modulation methods: (1) a "first" Gaussian Frequency Shift Keying (GFSK) modulation method; and (2) a "second" Differential Phase Shift Keying (DPSK) modulation method. Each of Broadcom's Bluetooth EDR Products can transmit a "first sequence" with a GFSK access code/header whose LT_ADDR and TYPE fields indicate the modulation method of a "second sequence" comprising a packet payload. Depending on the "first sequence," the "second sequence" will have either a GFSK payload (in the case of a Basic Rate packet) or a DPSK payload (in the case of an Enhanced Rate packet). Further, after transmitting an Enhanced Rate packet, each of Broadcom's Bluetooth EDR Products can subsequently transmit a Basic Rate packet with a payload communicating using the first GFSK modulation method.

38. Upon information and belief, at least as of the filing of this complaint, Broadcom also indirectly infringes one or more claims of the '580 Patent by active inducement under 35 U.S.C. § 271(b). Broadcom has induced, caused, urged,

encouraged, aided and abetted its direct and indirect customers to make, use, sell, offer for sale and/or import products which are interoperable according to the Bluetooth EDR Specifications and thereby infringe the '580 Patent. Broadcom has done so by acts including but not limited to selling products that are interoperable according to the Bluetooth EDR Specifications to their customers; marketing the infringing capabilities of such products; and providing instructions, technical support and other support and encouragement for the use of such products. Such conduct by Broadcom was intended to and actually resulted in direct infringement, including the making, using, selling, offering for sale and/or importation of infringing Broadcom Bluetooth EDR Products in the United States. Broadcom has notice of the '580 Patent by at least the date of this complaint but, upon information and belief, Broadcom knew of the '580 Patent far earlier as a result of Broadcom following and/or press coverage of Rembrandt's prior litigation asserting the '580 Patent against Samsung, one of Broadcom's biggest customers. Moreover, Broadcom knew of the '580 Patent at least as early as December 3, 2013, as it was served a subpoena in the *Rembrandt v. Samsung* litigation that identified the '580 patent by its full patent number, and set forth the standards upon which Rembrandt's infringement case was premised.

39. The acts of infringement by Broadcom have caused damage to Rembrandt, and Rembrandt is entitled to recover from Broadcom the damages sustained by Rembrandt as a result of Broadcom's wrongful acts in an amount subject to proof at trial. Specifically, Rembrandt seeks damages for Broadcom's infringement of the '580 Patent from the date by which Rembrandt disclaimed claims 32, 34, 40, 43, and 44, which occurred on December 4, 2014, until the date that Samsung became licensed to the '580 Patent and became obligated to mark its licensed products with the '580 Patent number, which occurred on August 27, 2018.

40. Upon information and belief, since at least the filing of this lawsuit, Broadcom's aforementioned actions have been, and continue to be, committed in a knowing and willful manner and constitute willful infringement of the '580 Patent.

**REMBRANDT AND THE PATENTS-IN-SUIT**

41. Rembrandt has diligently protected the inventions in the patents-in-suit. For example, Rembrandt sought to obtain licenses from Samsung (one of Broadcom's biggest customers) and BlackBerry (another of Broadcom's customers), and it was engaged in litigation against both Samsung and Blackberry, including a jury trial against Samsung and a subsequent appeal brought by Samsung after the jury verdict in favor of Rembrandt. Ultimately, both Samsung and BlackBerry took a license and/or a release to the '228 and '580 Patents. Before Samsung obtained a license, a jury found Samsung liable for infringing the '228 and '580 Patents based on Samsung's use of Bluetooth EDR, and awarded past-damages of $15.7 million, which constituted a royalty rate of approximately 5 ½ cents per infringing unit. The Federal Circuit affirmed the finding that Bluetooth EDR infringed the '228 and '580 Patents.

42. The value of the patents-in-suit is further demonstrated by their repeated success against validity challenges. The claims were construed in the prior litigation after a *Markman* hearing. After a week-long trial, a jury found that all the asserted claims were valid. The Federal Circuit affirmed that finding that the '228 and '580 Patents were valid and infringed by Samsung, and that the claim construction was legally correct. Moreover, the United States Patent & Trademark Office refused to even institute *inter partes* reviews against claim 21 of the '228 Patent and claims 2 and 59 of the '580 Patent. And the United States Patent & Trademark Office recently confirmed the validity of claim 21 of the '228 Patent and claims 2 and 59 of the '580 Patent in the course of *ex parte* reexamination challenges instituted by Samsung. In sum, the validity of the asserted claims of the '228 and '580 Patents has been reconfirmed in the course of a jury trial and

subsequent appeal, and in post-trial proceedings at the U.S. Patent & Trademark Office.

## JURY DEMAND

43. Rembrandt demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Rembrandt requests entry of judgment in its favor and against Broadcom as follows:

a) A declaration that Broadcom has infringed and is infringing U.S. Patent Nos. 8,457,228 and 8,023,580;

b) A declaration that Broadcom's infringement was willful;

c) An award of damages to Rembrandt arising out of Broadcom's infringement of U.S. Patent Nos. 8,457,228 and 8,023,580, including enhanced damages pursuant to 35 U.S.C. § 284, together with prejudgment and post-judgment interest, in an amount according to proof;

d) An award of attorneys' fees pursuant to 35 U.S.C. § 285 or as is otherwise permitted by law; and,

e) Granting Rembrandt its costs and further relief as the Court may deem just and proper.

Dated:  April 15, 2019

Respectfully submitted,

*/s/ David M. Stein*

David M. Stein (State Bar No. 198256)
dstein@ggtriallaw.com
**GREENBERG GROSS LLP**
650 Town Center Drive, Suite 1700
Costa Mesa, CA 92626
Phone:  949.383.2800
Fax:      949.383.2801

Michael F. Heim
(*Pro Hac Vice* application to be submitted)
mheim@hpcllp.com
Eric J. Enger
(*Pro Hac Vice* application to be submitted)
eenger@hpcllp.com
Christopher M. First
(*Pro Hac Vice* application to be submitted)
cfirst@hpcllp.com
Blaine A. Larson
(*Pro Hac Vice* application to be submitted)
blarson@hpcllp.com
**HEIM, PAYNE & CHORUSH, L.L.P.**
1111 Bagby St., Suite 2100
Houston, Texas 77002
Phone: 713.221.2000
Fax:     713.221.2021

Demetrios Anaipakos
(*Pro Hac Vice* application to be submitted)
danaipakos@azalaw.com
Amir Alavi
(*Pro Hac Vice* application to be submitted)
aalavi@azalaw.com
Alisa Lipski
(*Pro Hac Vice* application to be submitted)
alipski@azalaw.com
Kyril Talanov
(*Pro Hac Vice* application to be submitted)
ktalanov@azalaw.com
**AHMAD, ZAVITSANOS, ANAIPAKOS, ALAVI & MENSING, P.C.**
1221 McKinney Street, Suite 3460
Houston, TX 77010
Phone: 713.655.1101
Fax:     713.655.0062

***Attorneys for Rembrandt Wireless Technologies, LP***

-19-
COMPLAINT FOR INFRINGEMENT OF U.S. PATENT NOS. 8,457,228 & 8,023,580