1   David M. Stein (State Bar No. 198256)
    dstein@ggtriallaw.com
2   **GREENBERG GROSS LLP**
    650 Town Center Drive, Suite 1700
3   Costa Mesa, California 92626
    Phone: 949.383.2800
4   Fax:   949.383.2801

5   Michael F. Heim (Admitted *Pro Hac Vice*)
    mheim@hpcllp.com
6   Eric J. Enger (Admitted *Pro Hac Vice*)
    eenger@hpcllp.com
7   Christopher M. First (Admitted *Pro Hac Vice*)
    cfirst@hpcllp.com
8   Blaine A. Larson (Admitted *Pro Hac Vice*)
    blarson@hpcllp.com
9   **HEIM, PAYNE & CHORUSH, L.L.P.**
    1111 Bagby St., Suite 2100
10  Houston, Texas 77002
    Phone: 713.221.2000
11  Fax:   713.221.2021

12  Attorneys for Plaintiff *Rembrandt Wireless Technologies, LP*

13

14          **UNITED STATES DISTRICT COURT**

15   **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

16

17  REMBRANDT WIRELESS         )   Case No. 8:19-cv-00708-JLS-JDE
    TECHNOLOGIES, LP,          )
18                             )   **PLAINTIFF REMBRANDT**
            Plaintiff,         )   **WIRELESS TECHNOLOGIES, LP'S**
19                             )   **ANSWER TO BROADCOM'S FIRST**
            v.                 )   **AMENDED COUNTERCLAIMS**
20                             )
    BROADCOM INCORPORATED and  )
21  BROADCOM CORPORATION,      )   **JURY TRIAL DEMANDED**
                               )
22                             )
            Defendant.         )
23  _____)

24

25

26

27

28

Plaintiff Rembrandt Wireless Technologies, LP ("Rembrandt," "Rembrandt Wireless," or "Plaintiff") files this Answer to Defendants' First Amended Counterclaims filed by Defendants Broadcom Incorporated and Broadcom Corporation (collectively, "Broadcom").  *See* Doc. No. 72 ("Counterclaims"). Rembrandt answers Broadcom's Counterclaims using the same paragraph numbers that appear in Broadcom's pleading.  *See id.* at 9-27.  All Broadcom allegations not expressly admitted in this Rembrandt pleading are denied.

<u>**COUNTERCLAIMS**</u>

1.     Broadcom hereby pleads the following counterclaims against Rembrandt, and alleges as follows:

**Rembrandt's Answer**: Paragraph 1 does not contain any allegations that require a response.  To the extent a response is required, denied.

<u>**PARTIES**</u>

2.     Broadcom Incorporated is a Delaware corporation having a place of business at 1320 Ridder Park Dr., San Jose, California, 95131.  Broadcom Corporation has a place of business at 1320 Ridder Park Dr., San Jose, California, 95131. Broadcom Corporation is an indirect, wholly owned subsidiary of Broadcom Incorporated. Broadcom Incorporated and Broadcom Corporation are herein referred to collectively as "Broadcom."

**Rembrandt's Answer**: Admitted that Broadcom Incorporated purports to be a "Delaware corporation" having a place of business at 1320 Ridder Park Dr., San Jose, California, 95131.  Admitted that Broadcom Corporation purports to have a place of business at 1320 Ridder Park Dr., San Jose, California, 95131.  Admitted that Broadcom Corporation purports to be an indirect, wholly owned subsidiary of Broadcom Incorporated.  Denied as to any other allegations made in Paragraph 2.

3.     Upon information and belief, and as alleged in its Complaint, Rembrandt Wireless Technologies, LP's ("Rembrandt") is a Virginia limited partnership, having a principal place of business at 401 City Ave., Suite 900, Bala Cynwyd, Pennsylvania

1  19004.

2  **Rembrandt's Answer**: Admitted.

3  <u>**JURISDICTION AND VENUE**</u>

4  4.  Rembrandt has filed a Complaint in this Court against Broadcom.

5  **Rembrandt's Answer**: Admitted.

6  5.  Rembrandt has alleged in its Complaint that it is the assignee and owner
7  of (a) United States Patent No. 8,457,228 ("the '228 Patent") entitled "System and
8  Method of Communication Using at Least Two Modulation Methods" and (b) United
9  States Patent No. 8,023,580 ("the '580 Patent") entitled "System and Method of
10  Communication Using at Least Two Modulation Methods" (collectively the "Patents-
11  in-Suit").

12  **Rembrandt's Answer**: Admitted.

13  6.  Rembrandt alleges in its Complaint that Broadcom has infringed the
14  Patents-in-Suit.

15  **Rembrandt's Answer**: Admitted.

16  7.  This Court has subject matter jurisdiction over this counterclaim under
17  28 U.S.C. §§ 1331, 1332, 1338(a), 1367, the Patent Laws of the United States, 35
18  U.S.C. § 100, *et seq*., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and
19  2202. This action is based upon an actual controversy between Rembrandt and
20  Broadcom regarding, for example, the invalidity and non-infringement of the claims
21  of the Patents-in-Suit, and alleged damages thereunder.

22  **Rembrandt's Answer**: Admitted that subject matter jurisdiction is currently
23  proper in this Court for these particular Broadcom counterclaims.  Admitted this
24  action is based upon an actual controversy between the parties regarding the validity
25  and infringement of the asserted claims of the Patents-in-Suit, and damages
26  thereunder.  Denied as to any other allegations made in Paragraph 7.

27  8.  Broadcom's counterclaims are so related to each other and to
28  Rembrandt's claims in the Complaint that they form part of the same case or

1   controversy under Article III of the United States Constitution.

2       **Rembrandt's Answer**: Admitted that these particular Broadcom

3   counterclaims are so related to each other and to Rembrandt's claims in the

4   Complaint that they form part of the same case or controversy under Article III of the

5   United States Constitution.  Denied as to any other allegations made in Paragraph 8.

6       9.    As to Broadcom's counterclaims, venue is proper in this judicial district

7   pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400.

8       **Rembrandt's Answer**: Admitted that venue is proper in this judicial district

9   for these particular Broadcom counterclaims.  Denied as to any other allegations

10  made in Paragraph 9.

11      10.   The Court has personal jurisdiction over Rembrandt, at least because

12  Rembrandt has previously appeared in this lawsuit, is represented by counsel, and it

13  has submitted to the jurisdiction of this Court.

14      **Rembrandt's Answer**: Admitted for the purposes of this action only.

15           <u>**COUNT I: Declaratory Judgment of Non-Infringement**</u>

16      11.   Broadcom incorporates the above allegations as if set forth fully herein.

17      **Rembrandt's Answer**: Rembrandt restates and incorporates by reference

18  Paragraphs 1 through 10 as if set forth fully herein.

19      12.   Broadcom's products do not directly or indirectly infringe, literally or

20  under the doctrine of equivalents, any claim of the Patents-in-Suit, and Broadcom

21  seeks a declaration to that effect.

22      **Rembrandt's Answer**: Admitted that Broadcom purports to seek a declaration

23  of the Court that Broadcom's products do not infringe any claim of the Patents-in-

24  Suit.  Denied as to any other allegations made in Paragraph 12.

25      13.   Under 35 U.S.C. § 285, this is an exceptional [sic] entitling Broadcom to

26  an award of costs and attorneys' fees incurred in connection with this action, at least

27  because Rembrandt filed its Complaint with knowledge of the facts stated in this

28  Counterclaim.

1    **Rembrandt's Answer**: Denied.

2    <u>**COUNT II: Declaratory Judgment of Invalidity**</u>

3    14.    Broadcom incorporates the above allegations as if set forth fully herein.

4    **Rembrandt's Answer**: Rembrandt restates and incorporates by reference

5    Paragraphs 1 through 13 as if set forth fully herein.

6    15.    The claims of the Patents-in-Suit are invalid for failure to comply with

7    one or more of the requirements of the patent laws, including but not limited to 35

8    U.S.C. §§ 101, 102, 103, and/or one or more paragraphs of § 112, and the rules and

9    laws pertaining to those provisions, and Broadcom seeks a declaration to that effect.

10   **Rembrandt's Answer**: Admitted that Broadcom purports to seek a declaration

11   of the Court that the claims of the Patents-in-Suit are invalid.  Denied as to any other

12   allegations made in Paragraph 15.

13   16.    Under 35 U.S.C. § 285, this is an exceptional [sic] entitling Broadcom to

14   an award of costs and attorneys' fees incurred in connection with this action, at least

15   because Rembrandt filed its Complaint with knowledge of the facts stated in this

16   Counterclaim.

17   **Rembrandt's Answer**: Denied.

18   <u>**COUNT III: Declaratory Judgment of No Damages**</u>

19   17.    Broadcom incorporates the above allegations as if set forth fully herein.

20   **Rembrandt's Answer**: Rembrandt restates and incorporates by reference

21   Paragraphs 1 through 16 as if set forth fully herein.

22   18.    Rembrandt is not entitled to collect pre-suit damages because it and its

23   licensees failed to comply with the requirements of 35 U.S.C. § 287.

24   **Rembrandt's Answer**: Denied.

25   19.    Under 35 U.S.C. § 285, this is an exceptional [sic] entitling Broadcom to

26   an award of costs and attorneys' fees incurred in connection with this action, at least

27   because Rembrandt filed its Complaint with knowledge of the facts stated in this

28   Counterclaim.

1     **Rembrandt's Answer**: Denied.

2         <u>**COUNT IV: Declaratory Judgment of Unenforceability**</u>

3     20.   Broadcom incorporates the above allegations as if set forth fully herein.

4     **Rembrandt's Answer**: Rembrandt restates and incorporates by reference

5 Paragraphs 1 through 19 as if set forth fully herein.

6     21.   Rembrandt has engaged in inequitable conduct before the U.S. Patent

7 and Trademark Office ("USPTO") by failing to disclose material information to the

8 USPTO, with deceptive intent, which information had it been disclosed would have

9 resulted in the rejection of the applications that led to the Patents-in-Suit.  This

10 information includes, at least, facts concerning (a) conception and reduction to

11 practice of the claims at issue in this litigation; (b) potentially invalidating sales and

12 offers to sell products embodying the claims at issue in this litigation; and (c) public

13 uses of prior art products embodying the claims at issue in this litigation. In support

14 of these allegations, Broadcom states as follows.

15     **Rembrandt's Answer**: Denied.

16     22.   Under 37 C.F.R. § 1.56(a), "[a] patent by its very nature is affected with

17 a public interest. The public interest is best served, and the most effective patent

18 examination occurs when, at the time an application is being examined, the Office is

19 aware of and evaluates the teachings of all information material to patentability."

20 Therefore, "[e]ach individual associated with the filing and prosecution of a patent

21 application has a duty of candor and good faith in dealing with the Office, which

22 includes a duty to disclose to the Office all information known to that individual to be

23 material to patentability as defined in this section." *Id*. This "duty to disclose

24 information exists with respect to each pending claim until the claim is cancelled or

25 withdrawn from consideration, or the application becomes abandoned."  *Id*.

26     **Rembrandt's Answer**: Admitted.

27     23.   The individuals associated with the filing or prosecution of a patent

28 application who have a duty of candor to disclose material information to the Patent

Office, are: (1) each inventor named in the application; (2) each attorney or agent who prepares or prosecutes the application; and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor, the applicant, an assignee, or anyone to whom there is an obligation to assign the application. 37 C.F.R. § 1.56(c).

**Rembrandt's Answer**: Admitted.

24.   Gordon Bremer is listed as the inventor on each of the Patents-in-Suit.

**Rembrandt's Answer**: Admitted.

25.   The Patents-in-Suit purport to claim priority to a string of earlier-filed patent applications, the first of which is Provisional Application No. 60/067,562, filed on December 5, 1997.

**Rembrandt's Answer**: Admitted.

26.   Rembrandt alleges that certain documents evidence the conception, reduction to practice, and development of the invention claimed in each asserted claims on or before the December 5, 1997, the claimed priority date.

**Rembrandt's Answer**: Admitted.

27.   On information and belief, at the time the claimed inventions allegedly were made, Mr. Bremer was an employee of Paradyne Corporation ("Paradyne").

**Rembrandt's Answer**: Admitted.

28.   On March 8, 1999, Mr. Bremer executed a document assigning to Paradyne Corporation, his entire right, title and interest, for the United States of America, in and to the alleged inventions in patent application Serial No. 09/205,205. *See* Patent & Trademark Office Reel: 9844 Frame: 0480.  That application purports to claim priority to Provisional Application No. 60/067,562, and issued as U.S. Patent No. 6,614,838.

**Rembrandt's Answer**: Admitted that on March 8, 1999, Mr. Bremer executed a document assigning to Paradyne Corporation, his entire right, title and interest, for the United States of America, in and to certain inventions related to "System And

Method Of Communication Via Embedded Modulation" described in patent application Serial No. 09/205,205. Admitted that patent application Serial No. 09/205,205 claims priority to Provisional Application No. 60/067,562 and issued as U.S. Patent No. 6,614,838. Denied as to any other allegations made in Paragraph 28.

29. U.S. Patent No. 6,614,838 is one of the patents to which the Patents-in-Suit purport to claim priority.

**Rembrandt's Answer**: Admitted to the extent the allegations in Paragraph 29 are consistent with the Patents-in-Suit's priority claim to Provision Application No. 60/067,562, filed on December 5, 1997. Denied as to any other allegations made in Paragraph 29.

30. Before Plaintiff Rembrandt obtained the patents at issue in this case, the patents belonged to Paradyne, a former AT&T affiliate that developed, manufactured, and distributed certain network access products. *See In re Rembrandt Technologies LP Patent Litigation*, 899 F.3d 1254, 1261 (Fed. Cir. 2018).

**Rembrandt's Answer**: Admitted that Paradyne was a former AT&T affiliate that developed, manufactured and distributed certain network access products prior to 2004. Denied that Paradyne owned the Patents-in-Suit. Rembrandt lacks sufficient knowledge or information to admit or deny the remaining allegations of Paragraph 30, and on that basis denies those allegations.

31. In September 2004, Paradyne and/or its affiliate Paradyne Networks, Inc., contacted Rembrandt and/or its affiliate(s) to propose a joint "patent assertion team" to exploit certain Paradyne patents. *In re Rembrandt*, 899 F.3d at 1261. Thus, as early as September 2004, Rembrandt and its predecessor-in-interest had the intention of asserting in litigation Paradyne patents that would be assigned to Rembrandt and such litigation was reasonably foreseeable.

**Rembrandt's Answer**: Denied.

32. In December 2004, Paradyne and/or its affiliate(s) executed a patent sale agreement that assigned several patents to Rembrandt and/or its affiliates. *See id*. The

1  agreement also gave Rembrandt and/or its affiliates the right to access and copy

2  relevant Paradyne documents. *Id*. The companies amended that agreement in

3  February 2005, adding additional Paradyne patent(s) to the portfolio assigned to

4  Rembrandt and/or its affiliate(s). *Id*.

5      **Rembrandt's Answer**: Admitted that in December 2004, Paradyne

6  Corporation executed a patent sale agreement that assigned several patents to

7  Rembrandt Technologies, LP.  Admitted that the December 2004 agreement gave

8  certain rights to Rembrandt Technologies, LP the right to access and copy certain

9  Paradyne documents.  Admitted that Paradyne Corporation and Rembrandt

10  Technologies, LP amended the December 2004 agreement in February 2005, adding

11  an additional patent to the portfolio assigned to Rembrandt Technologies, LP.

12  Denied as to any other allegations made in Paragraph 32.

13      33.    Rembrandt's in-house counsel, John Meli, asked Paradyne in March

14  2005 to "save any material that relates to patents you sold to us or plan to sell to us,

15  including product data that embodies the patented inventions." *Id*. This request

16  reflected Rembrandt's knowledge of its duty to preserve evidence in light of

17  reasonably foreseeable litigation.

18      **Rembrandt's Answer**: Admitted that John Meli asked Paradyne in March

19  2005 to "save any material that relates to patents you sold to us or plan to sell to us,

20  including product data that embodies the patented inventions."  Denied as to any

21  other allegations made in Paragraph 33.

22      34.    Paradyne was acquired in September 2005 by Zhone Technologies

23  ("Zhone"), an equipment manufacturer. *In re Rembrandt*, 899 F.3d at 1261-62.

24  Thereafter, Zhone cut much of Paradyne's workforce and footprint.  *Id*.

25      **Rembrandt's Answer**: Admitted.

26      35.    Zhone also began to destroy Paradyne's documents, most of which were

27  housed in a storage facility separate from Paradyne's offices. *In re Rembrandt*, 899

28  F.3d at 1262. Zhone's general counsel, Paul Castor, testified that the purpose of the

1   document destruction was to reduce storage costs, that boxes of documents were

2   destroyed based on their dates (and not their contents), and that Zhone had no staff

3   and no time to review their contents before destroying the boxes. *Id*.

4       **Rembrandt's Answer**: Admitted that Zhone destroyed certain documents after

5   Paradyne was acquired in September 2005 by Zhone.  Admitted that certain Paradyne

6   documents were housed in a storage facility separate from Paradyne's offices.

7   Admitted that Zhone's general counsel, Paul Castor, testified that the purpose of the

8   document destruction was to reduce storage costs, that boxes of documents were

9   destroyed based on their dates (and not their contents), and that Zhone had no staff

10  and no time to review their contents before destroying the boxes.  Denied as to any

11  other allegations made in Paragraph 35.

12      36.   Zhone discarded approximately 3,200 boxes of documents in total, 90%

13  of them between September 2005 and April 2006. *In re Rembrandt*, 899 F.3d at 1262.

14      **Rembrandt's Answer**: Admitted.

15      37.   Upon information and belief, Zhone also destroyed electronically stored

16  information ("ESI") by, among other things, physically destroying the electronic

17  media holding the ESI. *See, e.g.*, December 4, 2008 Deposition Transcript of Linda S.

18  Punda (Case 1:07-md-01848-LPS, Dkt. 891-2 at Ex. 25) at 34:3-5 ("Q … American

19  Document Destruction destroyed 239 tapes. Right?  A Yes."); *id* at 56:19-57:16 ("Q

20  Is it your understanding that these electronic media were destroyed? A Yes."); *id*. at

21  60:3-15 ("This certificate shall serve as confirmation of 166 pounds of magnetic

22  media and 2,845.5 pounds of hard copy destroyed for Zhone Technologies by

23  confidential shredding."); *id*. at 91:18-94:18 (discussing destruction of "4 millimeter

24  tapes and floppies"); *id*. at 159:3-160:25 ("Q And this floppy disk was destroyed.

25  Right? A Yes. … Q And this online documentation for the Accucom product, this

26  was destroyed. Right? A Yes.").

27      **Rembrandt's Answer**: Admitted that Zhone employee Linda S. Punda

28  testified under oath that certain physical media were destroyed that contained some

1  electronically stored information.  Denied as to any other allegations made in

2  Paragraph 37.

3      38.    Upon information and belief, the destroyed boxes and electronic media

4  referenced above included documents and ESI relating to the patents assigned by

5  Paradyne and Zhone to Rembrandt, including patents in the same family as the

6  Patents-in-Suit (*i.e.,* patents claiming the same priority date as the Patents-in-Suit).

7      **Rembrandt's Answer**: Denied.

8      39.    As has been found in previous litigation commenced by Rembrandt, the

9  destroyed documents related to (a) conception and reduction to practice of certain

10  patents; (b) potentially invalidating sales and offers to sell; (c) public uses of prior art

11  products; (d) royalty agreements and licensing; (e) standardization of certain

12  technology; and (f) patent prosecution. *In re Rembrandt*, 899 F.3d at 1262.

13      **Rembrandt's Answer**: Denied.

14      40.    Rembrandt's then in-house counsel, John Meli, repeatedly visited

15  Paradyne's offices to review and copy documents around the time of the sale to

16  Zhone. *Id*. As described above, this was during the time that documents and

17  electronically stored information were being destroyed by Zhone.

18      **Rembrandt's Answer**: Admitted that John Meli visited Paradyne's offices on

19  multiple occasions around the time of the sale to Zhone.  Rembrandt lacks sufficient

20  knowledge or information to admit or deny whether John Meli visited Paradyne's

21  offices to review and copy documents.  Denied as to any other allegations made in

22  Paragraph 40.

23      41.    Meli and other Rembrandt witnesses later testified that Rembrandt did

24  not send Paradyne or Zhone a formal document retention notice until at least 2007. *In*

25  *re Rembrandt*, 899 F.3d at 1262. Several Zhone employees could recall no such

26  requests from Rembrandt before 2008. *Id*. The Federal Circuit ruled that Rembrandt

27  did not issue a formal document retention notice until May 2008. *Id.* at 1270.

28      **Rembrandt's Answer**: Denied.

42.     On February 14, 2006, Rembrandt and/or its affiliate(s) signed a consulting agreement with Attic IP ("Attic"). *In re Rembrandt*, 899 F.3d at 1262. Attic IP was a consulting firm formed by, among others, Gordon Bremer, the named inventor of the Patents-in-Suit and the former director of Paradyne's technology department who had managed its patent portfolio. *Id*. at 1261-62. Attic IP was also formed by Patrick Murphy, Paradyne's Chief Financial Officer, and Scott Horstemeyer, Paradyne's outside patent prosecution counsel.  *Id*.

**Rembrandt's Answer**: Admitted that Rembrandt IP Management LLC signed a consulting agreement with Attic IP LLC on February 14, 2006.  Admitted that Attic was a consulting firm formed by, among others, Gordon Bremer, the named inventor of the Patents-in-Suit and the former director of Paradyne's technology department who had previously managed its patent portfolio.  Admitted that Attic IP was also formed by Patrick Murphy, Paradyne's former Chief Financial Officer, and Scott Horstemeyer, a lawyer with the firm that had served as Paradyne's patent prosecution counsel.  Denied as to any other allegations made in Paragraph 42.

43.     The Attic consultants agreed to provide Rembrandt and/or its affiliate(s) with assistance with patent portfolio analysis and ongoing patent assertion programs. *In re Rembrandt*, 899 F.3d at 1262. In exchange, Rembrandt would pay Attic an annual flat fee, in addition to a percentage of licensing or litigation royalties if Rembrandt subsequently acquired any patents from Zhone.  *Id*.

**Rembrandt's Answer**: Admitted that Attic consultants agreed to provide Rembrandt IP Management LLC with assistance with patent portfolio analysis and ongoing patent assertion programs.  Denied as to any other allegations made in Paragraph 43.

44.     Weeks after Mr. Bremer signed this agreement, but before Rembrandt and/or its affiliate(s) had acquired any patents from Zhone, Zhone's general counsel, Paul Castor, asked Bremer to review 30 boxes of documents.  *In re Rembrandt*, 899 F.3d at 1262. Bremer wrote back to Castor that the documents generally contained

1  "sales/marketing strategies, plans, reports, etc." not legal documents. *Id*.  Bremer

2  asked whether Castor wanted him to provide other details and whether the boxes

3  should remain in storage or be destroyed.  *Id*.

4      **Rembrandt's Answer**: Admitted that on February 14, 2006, before Rembrandt

5  Technologies, LP had acquired any patents from Zhone, Gordon Bremer signed the

6  Attic agreement referenced in Paragraph 44.  Admitted that Paul Castor asked Bremer

7  to review 30 boxes of documents after Mr. Bremer signed the agreement, but before

8  the agreement took effect.  Admitted that Bremer wrote back to Castor that the

9  documents "generally contained sales/marketing strategies, plans, reports, etc." not

10  "'legal' documents."  Admitted that Bremer asked whether Castor wanted him to

11  provide other details and whether the boxes should remain in storage or be destroyed.

12  Denied as to any other allegations made in Paragraph 44.

13      45.   Castor simply wrote back "destroy." *Id*.

14      **Rembrandt's Answer**: Admitted that Paul Castor wrote back "destroy" in

15  response to Bremer's inquiry referenced in Paragraph 44.

16      46.   Bremer did not object.  *Id*.

17      **Rembrandt's Answer**: Rembrandt lacks sufficient knowledge or information

18  to admit or deny the allegations in Paragraph 46, and on that basis denies those

19  allegations.

20      47.   A few months later, on June 9, 2006, Rembrandt and/or its affiliate(s)

21  entered into a patent sale agreement with Zhone, acquiring more than 100 patents. *In*

22  *re Rembrandt*, 899 F.3d at 1262.

23      **Rembrandt's Answer**: Admitted that on June 9, 2006, Rembrandt

24  Communications, LP entered into a patent sale agreement with Zhone, acquiring

25  more than 100 patents.  Denied as to any other allegations made in Paragraph 47.

26      48.   Like the agreement with Paradyne, the agreement provided that Zhone

27  would give Rembrandt access to documents relating to the assigned patents.  *Id*.

28      **Rembrandt's Answer**: Denied.

49.     On June 12, 2006, Rembrandt learned that Zhone was planning to discard warehoused documents, including documents relevant to the patents Rembrandt had purchased from Paradyne. *In re Rembrandt*, 899 F.3d at 1262. Rembrandt urged Zhone not to destroy documents relevant to the patents it had purchased and began to work out an arrangement to preserve them. *Id*. Mr. Castor told Rembrandt that it was welcome to have files relating to the purchased patents but that if Rembrandt was not interested in them, Zhone would likely destroy them in accordance with its records policy. *Id*. Rembrandt told Zhone to send Rembrandt the relevant files.  *Id*.

**Rembrandt's Answer**: Denied.

50.     In August 2006, Rembrandt arranged for the Attic consultants to take custody of the Zhone documents, including patent disclosure and prosecution files, patent maintenance files, inventor files, license agreement and acquisition files, technical files, and patent marketing files. *In re Rembrandt*, 899 F.3d at 1262-63.

**Rembrandt's Answer**: Denied.

51.     In September 2006, Rembrandt's affiliate Rembrandt Technologies LP sued Comcast in the Eastern District of Texas, asserting infringement of six patents it had acquired from Paradyne. *In re Rembrandt*, 899 F.3d at 1263. Rembrandt then sued several other cable provides in the same district in June 2006.  *Id*.

**Rembrandt's Answer**: Admitted that in September 2006, Rembrandt Technologies, LP sued Comcast in the Eastern District of Texas, asserting infringement of six patents it had acquired from Paradyne.  Denied as to any other allegations made in Paragraph 51.

52.     After Rembrandt acquired more patents from Zhone, it filed a second wave of litigation in November 2006. *In re Rembrandt*, 899 F.3d at 1263. Rembrandt added five patents, including two from Zhone, to its pending suits. *Id*. At that time, the Attic consultants—Bremer, Murphy, and Horstemeyer—gained a take in the outcome of Rembrandt's litigation.

1

2      **Rembrandt's Answer**: Denied.

     53.    Rembrandt additionally asserted four of those patents against Adelphia

3 Communications Corp. in its ongoing bankruptcy proceedings before the Bankruptcy

4 Court for the Southern District of New York, and sued several broadcast networks in

5 the District of Delaware. *In re Rembrandt*, 899 F.3d at 1263.

6      **Rembrandt's Answer**: Denied.

7      54.    The Judicial Panel on Multidistrict Litigation consolidated all of

8 Rembrandt's pending suits before Judge Sleet in the District of Delaware. *In re*

9 *Rembrandt*, 899 F.3d at 1263. Soon thereafter, several cable modem equipment

10 manufacturers filed suit against Rembrandt seeking a declaratory judgment that their

11 products did not infringe any valid patents. *Id*. The declaratory judgment action was

12 consolidated into the multi-district litigation as well.

13      **Rembrandt's Answer**: Denied.

14      55.    After a *Markman* hearing in August 2008, the district court issued claim

15 construction orders on the nine Rembrandt patents at issue there, all of which were

16 adverse to Rembrandt. *In re Rembrandt*, 899 F.3d at 1263. On January 6, 2009,

17 Rembrandt advised the parties that, in light of the claim construction order, it would

18 not pursue its infringement claims on three of the patents unless the order was

19 reversed on appeal. *Id*. And, after further discovery, Rembrandt offered to drop two

20 more patents from the litigation in March and May 2009, respectively. *Id*.

21      **Rembrandt's Answer**: Denied.

22      56.    On July 31 2009, Rembrandt moved to dismiss its claims on eight of the

23 patents. *In re Rembrandt*, 899 F.3d at 1263-64. On the remaining patent, Rembrandt

24 stipulated to summary judgment of noninfringement subject to its appeal of the

25 district court's claim construction decisions, which were later affirmed by the Federal

26 Circuit. *Id*.

27      **Rembrandt's Answer**: Denied.

28      57.    Until Rembrandt dismissed its claims, the parties engaged in

1    considerable fact discovery. *In re Rembrandt*, 899 F.3d at 1264. The non-Rembrandt

2    parties had produced more than 15 million pages of documents and the parties took

3    over 100 depositions. *Id*. The litigation also featured nineteen expert reports from

4    twelve experts. *Id*.

5        **Rembrandt's Answer**: Admitted that during fact discovery, non-Rembrandt

6    parties to the litigation referenced in Paragraph 57 produced more than 15 million

7    pages of documents and the parties took over 100 depositions. Admitted that the

8    litigation also featured nineteen expert reports from twelve experts. Denied as to any

9    other claims in Paragraph 57.

10       58.    In that litigation, the non-Rembrandt parties also subpoenaed documents

11   from Paradyne and Zhone. *In re Rembrandt*, 899 F.3d at 1264. Although

12   Rembrandt's attorneys responded to these subpoenas, Rembrandt never searched the

13   warehouse where it claimed Paradyne's boxes were stored, nor acknowledged any

14   document destruction until after April 2008. *Id*. Rembrandt instead claimed that it

15   could not ascertain information relevant to the on-sale-bar, and it denied on several

16   occasions that it had access to or control over Paradyne product documentation. *Id*.

17   Rembrandt also asserted in interrogatory responses and in its opposition to summary

18   judgment that there was no evidence of prior sales, without mentioning that relevant

19   documents reflecting such sales might have been destroyed. *Id*.

20       **Rembrandt's Answer**: Admitted that non-Rembrandt parties to the litigation

21   referenced in Paragraph 58 subpoenaed documents from Paradyne and Zhone.

22   Denied as to any other allegations made in Paragraph 58.

23       59.    Through discovery, the non-Rembrandt parties ultimately learned about

24   Zhone's destruction of documents, the three Attic consultants' (including Gordon

25   Bremer) contingent interests in that litigation, and other matters. *In re Rembrandt*,

26   899 F.3d at 1264.

27       **Rembrandt's Answer**: Admitted that non-Rembrandt parties contended that

28   they learned about Zhone's destruction of documents, the three Attic consultants'

1    (including Gordon Bremer) contingent interests in that litigation, and other matters.

2    Denied as to any other allegations made in Paragraph 59.

3         60.    On July 8, 2009, the district court granted the non-Rembrandt parties

4    permission to file a motion for sanctions as a motion in limine.  *Id*.

5         **Rembrandt's Answer**: Admitted that on July 8, 2009, the district court

6    granted non-Rembrandt parties permission to file a motion for sanctions as a motion

7    in limine.  Denied as to any other allegations made in Paragraph 60.

8         61.    On November 16, 2009, the non-Rembrandt parties moved for a

9    determination that the case was exceptional under 35 U.S.C. § 285 and for an award

10   of attorney fees. *In re Rembrandt*, 899 F.3d at 1264. Grounds for the motion included,

11   among other things, that Rembrandt allowed Zhone to spoliate evidence and

12   improperly gave the Attic consultants a contingent interest in the outcome of the

13   litigation. *Id*.

14        **Rembrandt's Answer**: Admitted that on November 16, 2009, non-Rembrandt

15   parties moved for an exceptional case determination under 35 U.S.C. § 285 and for an

16   award of attorney fees.  Denied as to any other allegations made in Paragraph 61.

17        62.    In a separate motion, Adelphia argued that Rembrandt had failed to

18   comply with the marking requirement of 35 U.S.C. § 287, possessed evidence that the

19   on-sale-bar invalidated certain of the asserted patents, and engaged in bad-faith

20   conduct before the Bankruptcy Court for the Southern District of New York.  *Id*.

21        **Rembrandt's Answer**: Denied.

22        63.    After lengthy delays, the District of Delaware on August 20, 2015 issued

23   an order ruling on the motions. *In re Rembrandt*, 899 F.3d at 1265.  The court

24   determined that the case was "indeed exceptional" for several reasons.  *Id*.

25        **Rembrandt's Answer**: Admitted that the District of Delaware issued an order

26   ruling on the motions on August 20, 2015.  Admitted that the District of Delaware

27   court's exceptional case finding was based on several factors.  Denied as to any other

28   allegations made in Paragraph 63.

64.     First, the court found that the evidence showed that Rembrandt improperly compensated its fact witnesses, in violation of ethical rules of conduct. *In re Rembrandt*, 899 F.3d at 1265.

**Rembrandt's Answer**: Admitted that the district court stated that "the evidence shows that Rembrandt [Technologies, LP] improperly compensated its fact witnesses, in violation of ethical rules of conduct."  Denied as to any other allegations made in Paragraph 64.

65.     Second, the court was "convinced that Rembrandt engaged in (or failed to prevent) widespread document spoliation over a number of years." *In re Rembrandt*, 899 F.3d at 1265. The court concluded that the non-Rembrandt parties' "inability to conduct full discovery was prejudicial."  *Id*.

**Rembrandt's Answer**: Admitted that the district court stated that "the court is convinced that Rembrandt [Technologies, LP] engaged in (or failed to prevent) widespread document spoliation, over a number of years."  Admitted that the district court stated the "[non-Rembrandt Technologies, LP] parties' inability to conduct full discovery of relevant documents was prejudicial."  Denied as to any other allegations made in Paragraph 65.

66.     The court determined "that the evidence amply supports a finding that this case is exceptional." *In re Rembrandt*, 899 F.3d at 1265. The court dismissed Rembrandt's attempt "to wipe its hands of all wrongdoing, pointing the finger at third parties," because "Rembrandt must take responsibility for its own massive litigation." *Id*.

**Rembrandt's Answer**: Admitted that the district court stated that "the evidence amply supports a finding that this case is exceptional."  Admitted that the district court stated, "Rembrandt [Technologies, LP] attempts to wipe its hands of all wrongdoing, pointing the finger at third parties."  Denied as to any other allegations made in Paragraph 66.

67.     Ultimately, the court ordered Rembrandt to pay more than $51 million in

1    fees to the non-Rembrandt parties. *In re Rembrandt*, 899 F.3d at 1266.

2    　　　**Rembrandt's Answer**: Denied.

3    　　　68.　On appeal, the Federal Circuit found that the district court did not abuse

4    its discretion, procedurally or substantively, in determining that Rembrandt's pattern

5    of misconduct rendered the case exceptional under 35 U.S.C. § 285. *See In re*

6    *Rembrandt*, 899 F.3d at 1266-77.

7    　　　**Rembrandt's Answer**: Denied.

8    　　　69.　As to the district court's spoliation finding, the Federal Circuit found that

9    the district court had a reasonable basis to conclude that "Rembrandt stood idly by

10   while Zhone destroyed documents"; that some of the documents were "directly

11   helpful to [the non-Rembrandt parties'] invalidity defenses"; and that the non-

12   Rembrandt parties' "inability to conduct full discovery of relevant documents was

13   prejudicial." *Id*. at 1269-71.

14   　　　**Rembrandt's Answer**: Admitted that the Federal Circuit stated, "[T]he district

15   court had a reasonable basis to conclude that Rembrandt [Technologies, LP] stood

16   idly by while Zhone destroyed documents."  Further admitted that the Federal Circuit

17   stated that "some of those documents were not just relevant, but directly helpful to

18   Appellees' invalidity defenses."  Admitted that the Federal Circuit stated, "The

19   district court correctly noted, and Rembrandt [Technologies, LP] does not dispute,

20   that '[non-Rembrandt Technologies, LP] parties' inability to conduct full discovery

21   of relevant documents was prejudicial.'"  Denied as to any other allegations made in

22   Paragraph 69.

23   　　　70.　In particular, the Federal Circuit found that "[t]he destroyed documents

24   related to conception and reduction to practice of the patents at issue; potentially

25   invalidating sales and offer to sell; public uses of prior art products; royalty

26   agreements and licensing; standardization of the relevant technology; and patent

27   prosecution." *Id.*

28   　　　**Rembrandt's Answer**: Admitted that the Federal Circuit stated, "[t]he

1  destroyed documents related to conception and reduction to practice of the patents at
2  issue; potentially invalidating sales and offers to sell; public uses of prior art
3  products; royalty agreements and licensing; standardization of the relevant
4  technology; and patent prosecution."  Denied as to any other allegations made in
5  Paragraph 70.

6      71.    For the reasons alleged above and on information and belief, the named
7  inventor of the Patents-in-Suit, Gordon Bremer, and others having a duty of candor to
8  the Patent Office, including the other Attic consultants (particularly attorney Scott
9  Horstemeyer, who signed documents involving prosecution of priority patent
10 applications to the Patents-in-Suit), knew of invalidating prior art, including sales of
11 products covered by the Patents-in-Suit and public uses of prior art products, but
12 deliberately withheld this material prior art from the Patent Office, with the intent to
13 deceive the Patent Office.

14     **Rembrandt's Answer**: Denied.

15     72.    But for this misconduct, the Patent Office would not have issued the
16 Patents-in-Suit.

17     **Rembrandt's Answer**: Denied.

18     73.    Further, as alleged above and on information and belief, the named
19 inventor of the Patents-in-Suit, Gordon Bremer, and others having a duty of candor to
20 the Patent Office, including the other Attic consultants (including attorney Scott
21 Horstemeyer, who signed documents involving prosecution of priority patent
22 applications to the Patents-in-Suit), knew of and/or participated in the destruction of
23 the material prior art documents that should have been submitted to the Patent Office.

24     **Rembrandt's Answer**: Denied.

25     74.    On information and belief, the foregoing destruction of material prior art
26 evidence was intentional, widespread, advantage-seeking, and concealed.  In
27 particular, those involved in or aware of the destruction of the foregoing material
28 including employees of Paradyne, Zhone, and Rembrandt, reasonably could foresee

1  litigation relating to these patents and that the absence of destroyed information
2  would place their adversaries at a disadvantage in proving their defense in litigation.

3  **Rembrandt's Answer**: Denied.

4  76.  The intentional destruction of the material prior art documents also
5  shows further that Gordon Bremer and others having a duty of candor to the Patent
6  Office, including the other Attic consultants (including attorney Scott Horstemeyer,
7  who signed documents involving prosecution of priority patent applications to the
8  Patents-in-Suit), intended to deceive the Patent Office.

9  **Rembrandt's Answer**: Denied.

10  76.  For the reasons alleged above and on information and belief, these
11  individuals stood to benefit personally from Rembrandt's licensing or litigation of the
12  Patents-in-Suit and/or their predecessor patents or similar patents.  Hence, despite
13  their knowledge of the duty to preserve evidence (as referenced above) and their
14  expectation of litigation related to the enforcement of the purchase patent (as
15  referenced above), they participated in or knowingly allowed the destruction of
16  material evidence relating to the patents and patent applications in the same family as
17  the Patents-in-Suit.

18  **Rembrandt's Answer**: Denied.

19  77.  The destruction of this material evidence has prejudiced Broadcom's
20  ability to defend itself, including the ability to present defenses relating to invalidity
21  and inequitable conduct, and has harmed the public's interest.

22  **Rembrandt's Answer**: Denied.

23  78.  In the *In re Rembrandt* litigation discussed above, much of the relevant
24  district court and appellate papers remain sealed, and the Federal Circuit did not issue
25  a public opinion until August 25, 2018. In a different case that was resolved prior to
26  that date, Rembrandt asserted the two Patents-in-Suit against Samsung and other
27  parties in the Eastern District of Texas. *See Rembrandt Wireless Technologies, LP v.*
28  *Samsung Electronics Co.*, 853 F.3d 1370 (Fed. Cir. 2017).

1      **Rembrandt's Answer**: Admitted that certain district court and appellate

2 papers remain sealed in the *In re Rembrandt* litigation.  Admitted that the Federal

3 Circuit issued a public opinion in the *In re Rembrandt* litigation on August 25, 2018.

4 Admitted that Rembrandt asserted the two Patents-in-Suit against Samsung and

5 another party in the Eastern District of Texas.  Denied as to any other allegations

6 made in Paragraph 78.

7      79.     In that case, it was determined that Zhone was a licensee of the Patents-

8 in-Suit and that it had itself sold unmarked products practicing at least the '580

9 Patent, which is one of the Patents-in-Suit in this case. *See Rembrandt Wireless*

10 *Technologies, LP v. Samsung Electronics Co.*, 853 at 1384 ("Rembrandt did concede,

11 however, that the Zhone product practices claim 40 [of the '580 Patent.]"); *id.* at 1382

12 ("The license agreement between Rembrandt and Zhone did not require Zhone to

13 mark its products with the patent number.").

14      **Rembrandt's Answer**: Admitted that during oral argument of the appeal

15 in *Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*, Rembrandt

16 stated that the issue of whether Zhone practiced claim 40 of the '580 Patent was not a

17 live dispute.  Denied as to any other allegations made in Paragraph 79.

18      80.     And as discussed above, in *In re Rembrandt*, 899 F.3d at 1269-71, the

19 Federal Circuit found that the District of Delaware had a reasonable basis to conclude

20 that "Rembrandt stood idly by while Zhone destroyed documents"; that some of the

21 documents were "directly helpful to [the non-Rembrandt parties'] invalidity

22 defenses" in that case; and that the non-Rembrandt parties' "inability to conduct full

23 discovery of relevant documents was prejudicial."

24      **Rembrandt's Answer**: Admitted that the Federal Circuit stated, "[T]he district

25 court had a reasonable basis to conclude that Rembrandt [Technologies, LP] stood

26 idly by while Zhone destroyed documents."  Further admitted that the Federal Circuit

27 stated that "some of those documents were not just relevant, but directly helpful to

28 Appellees' invalidity defenses."  Admitted that the Federal Circuit stated, "The

1   district court correctly noted, and Rembrandt [Technologies, LP] does not dispute,

2   that '[non-Rembrandt Technologies, LP] parties' inability to conduct full discovery

3   of relevant documents was prejudicial.'"  Denied as to any other allegations made in

4   Paragraph 80.

5       81.   Thus, on these facts and on information and belief, Zhone destroyed

6   evidence showing invalidating uses of the Patents-in-Suit, including prior art sales

7   and public uses of Zhone products and Paradyne products embodying one or more of

8   the claims asserted in this litigation, and evidence showing invalidating inventorship

9   information (*e.g.*, that Gordon Bremer is not truly the sole inventor of the asserted

10  claims). Rembrandt is liable for the spoliation of this material evidence and for the

11  failure to disclose information concerning this art and these events to the USPTO

12  during prosecution of the Patents-in-Suit.

13      **Rembrandt's Answer**: Denied.

14      82.   During the prosecution of the Patents-in-Suit and their priority patent

15  applications, Gordon Bremer signed declarations wherein he averred that he is "the

16  original and first inventor(s) of the subject matter which is claimed and for which a

17  patent is sought." In so doing, he acknowledged "the duty to disclose to the United

18  States Patent and Trademark Office all information known to me[] to be material to

19  patentability as defined in 37 CFR 1.56, including for continuation-in-part

20  applications, material information which became available between the filing date of

21  the prior application and the national or PCT international filing date of the

22  continuation-in-part application."

23      **Rembrandt's Answer**: Admitted.

24      83.   On the facts alleged above and on information and belief, Mr. Bremer's

25  declarations are false, and Mr. Bremer knew that they were false.

26      **Rembrandt's Answer**: Denied.

27      84.   Mr. Bremer's false declarations also state that "[a]ll statements made

28  herein of my[] knowledge are true, all statements made herein on information and

1  belief are believed to be true, and further that these statements were made with the

2  knowledge that willful false statements and the like are punishable by fine or

3  imprisonment, or both, under 18 U.S.C. [§] 1001, and may jeopardize the validity of

4  the application or any patent issuing thereon."

5  **Rembrandt's Answer**: Admitted that Mr. Bremer's declarations state the

6  excerpt quoted in Paragraph 84.  Denied as to any other allegations made in

7  Paragraph 84.

8  85.    Mr. Bremer's false declarations are material to patentability of the

9  Patents-in-Suit and were submitted with the intent to deceive the USPTO.

10  **Rembrandt's Answer**: Denied.

11  86.    On information and belief, other people having a duty of candor to the

12  patent office, including the attorneys that prosecuted the Patents-in-Suit and their

13  priority applications (including Scott Horstemeyer who was also an Attic consultant),

14  knew that Mr. Bremer's declarations were false. Such people allowed Mr. Bremer to

15  submit false declarations, with intent to deceive the USPTO.

16  **Rembrandt's Answer**: Denied.

17  87.    Further, on the facts alleged above and on information and belief, Zhone

18  destroyed evidence showing a failure to comply with the patent marking statute, 35

19  U.S.C. § 287(a), which evidence would have established that Rembrandt is not

20  entitled to pre-suit damages in this case. Rembrandt is liable for the spoliation of this

21  material evidence as well. The Patents-in-Suit are unenforceable due to Rembrandt's

22  unclean hands for this additional reason.

23  **Rembrandt's Answer**: Denied.

24  88.    Rembrandt is not entitled to the benefit of its priority claim to its

25  provisional application filed in 1997. This is based in part on the fact that, on

26  February 14, 2003, Rembrandt filed a "continuation-in-part" application in its chain

27  of priority applications, which patent matured to U.S. Patent No. 7,248,626. *See*

28  "Related U.S. Application Data" on the fact of the Patents-in-Suit.

1  **Rembrandt's Answer**: Denied.

2  89.   By definition, the "continuation-in-part" application added new subject

3  matter that was not disclosed in Rembrandt's earlier patent applications in its chain of

4  priority.  *See* USPTO Manual of Patent Examining Procedure ("MPEP") § 201.08

5  ("A continuation-in-part is an application filed during the lifetime of an earlier

6  nonprovisional application, repeating some substantial portion or all of the earlier

7  nonprovisional application and adding matter not disclosed in the earlier

8  nonprovisional application.")

9  **Rembrandt's Answer**: Admitted.

10  90.   Among other things, the "continuation-in-part" application included a

11  new Figure 8 showing a master transceiver communicating with a "trib" transceiver

12  that can demodulate two types of messages (*i.e.,* "Type A + B") sent from the master.

13  *See* U.S. Patent No. 7,248,626 at Figure 8. The patent application immediately prior

14  to the "continuation-in-part" application, which issued as U.S. Patent No. 6,614,838,

15  lacked that Figure 8 (and lacked any other disclosure of tribs that could demodulated

16  two types of modulation).  It instead disclosed a master transceiver that could

17  communicate only with tribs understanding just one type of modulation.  For

18  example, Figure 5 of U.S. Patent No. 6,614,838 depicts a "Master Type A + B"

19  transceiver communicating with "Trib 1 Type A" (shown on the right of Figure 5)

20  and "Trib 2 Type B" (shown on the left). The written description of the patent

21  explains that each of the depicted tribs can demodulate only one type of modulation

22  (*i.e*., either Type A or Type B, but not both).

23  **Rembrandt's Answer**: Admitted that the "continuation-in-part" application

24  included a Figure 8.  Admitted that U.S. Patent No. 6,614,838 ("'838 Patent) did not

25  include Figure 8 of U.S. Patent No. 7,248,626 ("'626 Patent").  Admitted that the

26  '838 Patent includes a Figure 5.  Admitted that Figure 5 of the '838 Patent depicts a

27  "Master Type A + B" transceiver communicating with "Trib 1 Type A" and "Trib 2

28  Type B."  To the extent Paragraph 90 describes patents and/or inventions disclosed

1   therein, the patents speak for themselves and should be read as a whole.  Any attempt

2   to characterize the patents and/or inventions is denied.  Denied as to any other

3   allegations made in Paragraph 90.

4        91.    In its infringement contentions in this case, Rembrandt interprets the

5   asserted claims of the Patents-in-Suit as covering the same subject matter that was

6   added for the first time in the February 14, 2003 "continuation-in-part" application. In

7   particular, Rembrandt accuses Bluetooth "trib" devices of infringement, even though

8   the accused devices can understand two types of modulation.  *See* Complaint, *e.g.*, at

9   30 ("[E]ach of Broadcom's Bluetooth EDR Products can transmit using at least two

10   'different types' of modulation methods[.]").

11   **Rembrandt's Answer**: Admitted that Rembrandt accuses Bluetooth "trib"

12   devices of infringement.  Further admitted that Broadcom's accused devices, which

13   are Bluetooth EDR compliant, can understand two types of modulation—GFSK and

14   DPSK.  Denied as to any other allegations made in Paragraph 91.

15        92.    Thus, assuming solely for argument's sake in this Counterclaim that the

16   asserted claims can be correctly interpreted as covering "tribs" that can demodulate

17   two types of modulation, Rembrandt's priority claim can be no earlier than February

18   14, 2003.

19   **Rembrandt's Answer**: Denied.

20        93.    On information and belief, the sales information that Rembrandt, its

21   agents (including at least the Attic consultants), and/or its predecessor-in-interest

22   (including at least Zhone) intentionally destroyed, was material to the validity of the

23   Patents-in-Suit and was dated before any priority date to which Rembrandt may be

24   entitled. Such information was material to the patentability of the asserted claims of

25   the Patents-in-Suit, and was withheld from the USPTO with deceptive intent, and

26   then the information was intentionally destroyed.

27   **Rembrandt's Answer**: Denied.

28        94.    Further, on information and belief, the destroyed information was also

1  material to Rembrandt's and its licensee Zhone's failure to comply with the patent
2  marking statute. In particular, based on the facts alleged above and on information
3  and belief, the destroyed information would have shown that Zhone sold products
4  practicing the Patents-in-Suit, and that Zhone's products were not marked with the
5  Patents-in-Suit.

6  **Rembrandt's Answer**: Denied.

7  95.  In the event of failure to mark patented articles, "no damages shall be
8  recovered by the patentee in any action for infringement, except on proof that the
9  infringer was notified of the infringement and continued to infringe thereafter, in
10  which event damages may be recovered only for infringement occurring after such
11  notice." 35 U.S.C. § 287(a).

12  **Rembrandt's Answer**: Admitted that in the event of failure to mark patented
13  articles under 35 U.S.C. § 287(a), "no damages shall be recovered by the patentee in
14  any action for infringement, except on proof that the infringer was notified of the
15  infringement and continued to infringe thereafter, in which event damages may be
16  recovered only for infringement occurring after such notice." Denied as to any other
17  allegations made in Paragraph 95.

18  96.  Here, Rembrandt did not notify Broadcom of any alleged infringement
19  until the Complaint was filed. Therefore, Rembrandt's and Zhone's failure to mark
20  patent products means that "no damages shall be recovered by the patentee" in this
21  case. 35 U.S.C. § 287(a); *see Rembrandt Wireless Technologies, LP v. Samsung
22  Electronics Co*., 853 F.3d 1370 (Fed. Cir. 2017) (affirming finding that Zhone was a
23  licensee of Rembrandt and that Zhone sold certain unmarked products).

24  **Rembrandt's Answer**: Denied.

25  97.  In light of the foregoing allegations, the named inventor of the Patents-
26  in-Suit, Gordon Bremer, the attorneys that prosecuted the priority patent applications
27  (including but not limited to Scott Horstemeyer), Attic and its consultants, Rembrandt
28  and its agents and attorneys, and/or Rembrandt's predecessors in interest, including

1    for example Zhone and its agents and attorneys, come to Court with unclean hands

2    and engaged in inequitable conduct with respect to the Patents-in-Suit, in particular

3    with respect the asserted claims in this litigation.

4        **Rembrandt's Answer**: Denied.

5        98.    The Patents-in-Suit are therefore unenforceable under the doctrine of

6    unclean hands. The Patents-in-Suit are unenforceable for the additional reason that

7    the patents were procured by inequitable conduct.

8        **Rembrandt's Answer**: Denied.

9        99.    The Court has inherent power, as well as authority under Federal Rule of

10   Civil Procedure 37, to control litigation and assure the fairness of proceedings before

11   it. Thus, the Court has the discretion to impose sanctions for spoliation of evidence or

12   other litigation misconduct. Such sanctions include dismissal, which is an appropriate

13   sanction when a party (here, Rembrandt) has engaged in deliberately deceptive

14   practices that threaten to interfere with the rightful decision of the case or could

15   undermine the integrity of judicial proceedings.

16       **Rembrandt's Answer**: Denied.

17       100.   As alleged above and on information and belief, Rembrandt knew that

18   Zhone—Rembrandt's licensee and predecessor in interest with respect to the

19   ownership of the relevant patents and patent applications—was destroying material

20   documents relating to (a) conception and reduction to practice of the claims at issue in

21   this litigation; (b) potentially invalidating sales and offers to sell of products

22   embodying the claims at issue in this litigation; (c) potentially invalidating public

23   uses of prior art products embodying the claims at issue in this litigation; and (d)

24   Zhone's sales of un-marked patented articles.

25       **Rembrandt's Answer**: Denied.

26       101.   Additionally, it has already been determined that Rembrandt concealed

27   and lied under oath about its spoliation of voluminous material evidence. *See In re*

28   *Rembrandt*, 899 F.3d at 1264 ("Rembrandt instead claimed that it could not ascertain

1  information relevant to the on-sale bar, and it denied on several occasions that it had

2  access to or control over Paradyne product documentation. Rembrandt also asserted

3  in interrogatory responses and in its opposition to summary judgment that there was

4  no evidence of prior sales, without mentioning that relevant documents potentially

5  reflecting such sales might have been destroyed.").

6      **Rembrandt's Answer**: Denied.

7      102.   Rembrandt's spoliation was only later uncovered during discovery in a

8  protracted litigation, and Rembrandt was ordered to pay attorney's fees.

9      **Rembrandt's Answer**: Denied.

10      103.   Here, Broadcom has suffered prejudice due to Rembrandt's bad faith

11  spoliation, at least because the documents that were destroyed likely would have

12  showed that (1) the Patents-in-Suit are invalid, (2) the Patents-in-Suit are

13  unenforceable due to inequitable conduct, and (3) Rembrandt is not entitled to any

14  damages in this case for its and Zhone's failure to comply with the marking statute.

15      **Rembrandt's Answer**: Denied.

16      104.   In light of the public's interest in having patents that are not procured by

17  fraud; the Court's need to manage its docket; the fact that lesser sanctions are not

18  feasible or effective; Rembrandt's bad faith concealment and dishonesty as it relates

19  to its spoliation; and the resulting prejudice to Broadcom, the Court should order that

20  the Patents-in-Suit are unenforceable, and dismiss this action with prejudice.

21      **Rembrandt's Answer**: Denied.

22                 **Broadcom's Prayer for Relief**

23      Broadcom, reserving its right to amend its pleadings to add additional defenses,

24  affirmative defenses, and counterclaims if warranted by discovery, prays for the

25  following relief:

26      1.   A judgment that Broadcom has not infringed any claim of the Patents-

27  in-Suit.

28      2.   A judgment that each asserted claim of the Patents-in-Suit is invalid.

3.      A judgement that the Patents-in-Suit are unenforceable.

4.      A judgement that Rembrandt is not entitled to pre-suit or post-suit damages.

5.      A judgment that Rembrandt's Complaint be dismissed with prejudice, and that Rembrandt take nothing by its Complaint.

6.      A judgment in favor of Broadcom on each of its Counterclaims.

7.      A judgment that this is an exceptional case pursuant to 35 U.S.C. § 285 and an award to Broadcom of its reasonable attorneys' fees and costs of suit pursuant to 35 U.S.C. §§ 284, 285, and all other applicable statutes, rules, and common law.

8.      A finding under 35 U.S.C. § 285 that this is an exceptional case entitling Broadcom to an award of costs and attorneys' fees incurred in connection with this action, at least because Rembrandt filed its Complaint with knowledge of the facts stated in Broadcom's Counterclaims.

9.      An award to Broadcom of such other and further relief as the Court may deem just and proper.

**Rembrandt's Answer**: Denied that Broadcom is entitled to judgment in its favor or any relief requested in its Prayer for Relief.  Rembrandt requests that the Court deny Broadcom's requested relief and award Rembrandt the relief requested in Rembrandt's Complaint.

## Jury Demand

Broadcom requests a jury trial for all triable issues in the Plaintiff's Complaint and Broadcom's Counterclaims to the extent allowed by the United States Constitution and the Federal Rules of Civil Procedure.

**Rembrandt's Answer**: Broadcom's demand for a jury trial does not contain any factual allegations to which Rembrandt may respond.  Rembrandt has demanded a jury trial for its claims against Broadcom.

## REMBRANDT'S AFFIRMATIVE DEFENSES

Rembrandt, upon information and belief, asserts the following affirmative

defenses, both cumulatively and in the alternative, without admitting or denying that Rembrandt bears the burden of proof as to the defense.  Because Rembrandt's investigation is ongoing and discovery has not yet been taken, Rembrandt is without sufficient information regarding the existence or non-existence of other facts, acts and/or evidence that may constitute a defense to Broadcom's claims.  Rembrandt accordingly gives notice that they may assert additional defenses as facts, acts, and/or evidence that would constitute or support additional defenses are identified.

## Failure to State a Claim

Broadcom's Counterclaims fail to state any claim against Rembrandt for which relief may be granted and fail to state facts sufficient to entitle Broadcom to the relief sought.

## Failure to Plead Fraud with Particularity

Broadcom's Counterclaims fail to state any circumstances that constitute fraud with particularity.

1   Dated:  October 17, 2019         Respectfully submitted,

2
                                     */s/Amir Alavi*
3                                    David M. Stein (State Bar No. 198256)
                                     dstein@ggtriallaw.com
4                                    **GREENBERG GROSS LLP**
5                                    650 Town Center Drive, Suite 1700
                                     Costa Mesa, CA 92626
6                                    Phone: 949.383.2800

7
                                     Demetrios Anaipakos (Admitted *Pro Hac Vice*)
8                                    danaipakos@azalaw.com
9                                    Amir Alavi (Admitted *Pro Hac Vice*)
                                     aalavi@azalaw.com
10                                   Alisa Lipski (Admitted *Pro Hac Vice*)
11                                   alipski@azalaw.com
                                     Kyril Talanov (Admitted *Pro Hac Vice*)
12                                   ktalanov@azalaw.com
13                                   Louis Liao (Admitted *Pro Hac Vice*)
                                     lliao@azalaw.com
14                                   **AHMAD, ZAVITSANOS, ANAIPAKOS,**
15                                   **ALAVI & MENSING, P.C.**
                                     1221 McKinney Street, Suite 3460
16                                   Houston, TX 77010
17                                   Phone: 713.655.1101

18
                                     Michael F. Heim (Admitted *Pro Hac Vice*)
19                                   mheim@hpcllp.com
20                                   Eric J. Enger (Admitted *Pro Hac Vice*)
                                     eenger@hpcllp.com
21                                   Christopher M. First (Admitted *Pro Hac Vice*)
22                                   cfirst@hpcllp.com
                                     Blaine A. Larson (Admitted *Pro Hac Vice*)
23                                   blarson@hpcllp.com
24                                   **HEIM, PAYNE & CHORUSH, L.L.P.**
                                     1111 Bagby St., Suite 2100
25                                   Houston, TX 77002
                                     Phone: 713.221.2000
26

27                                   ***Attorneys for Plaintiff Rembrandt Wireless***
                                     ***Technologies, LP***
28

1

2

## **CERTIFICATE OF SERVICE**

3

4

5

6

7

The undersigned certifies that on October 17, 2019, the foregoing document was electronically filed with the Clerk of the Court for the UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, using Court's Electronic Filing (ECF) system. The ECF system routinely sends a "Notice of Electronic Filing" to all attorneys of record who have consented to accept this notice as service of this document by electronic means. Any party not receiving the Court's electronic notification will be sent a copy of the foregoing document.

8

9

Dated: October 17, 2019        */s/ Amir Alavi*
                              Amir Alavi

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28